## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SHIRLEY CRUSE, NORA GARCIA, FONDA
OSBORN, NANCY PEREZ-FUGERE, LILLIE
SANDOVAL, CHIP UPSAL, and GAIL
WILLIAMS, **on behalf of themselves and all
others similarly situated,**

**Plaintiffs,**

v.                                                                **CASE NO. 10-CV-1140**

ST. VINCENT HOSPITAL, d/b/a CHRISTUS ST.
VINCENT REGIONAL MEDICAL CENTER, a
**New Mexico Non-Profit Corporation,**

**Defendant.**

### DEFENDANT'S SECOND NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441(a) (b) and 1446(b), Defendant St. Vincent Hospital

("Defendant"), by and through its counsel, Jackson Lewis LLP (Danny W. Jarrett and James L.

Cook), gives notice of the removal of the action from the State of New Mexico, County of Santa

Fe, First Judicial District Court ("State Court"), styled as *Shirley Cruse, Vivian Jeanette Hunter[1]*,

*Nora Garcia, Fonda Osborn, Nancy Perez-Fugere, Lillie Sandoval, Chip Upsal, and Gail*

*Williams, on behalf of themselves and all others similarly situated, Plaintiffs, v. St. Vincent*

*Hospital, d/b/a CHRISTUS St. Vincent Regional Medical Center, a New Mexico Non-Profit*

*Corporation*, Case No. D-0101-CV-2010 00932, to the United States District Court for the

District of New Mexico ("Second Notice"). As grounds for its Second Notice, Defendant states

as follows.

---

[1] Plaintiff Vivian Jeanette Hunter was dismissed from this action on November 12, 2010.

## INTRODUCTION

Plaintiffs Shirley Cruse, Vivian Jeanette Hunter[2], Nora Garcia, Fonda Osborn, Nancy Perez-Fugere, Lillie Sandoval, Chip Upsal, and Gail Williams, (collectively the "Named Plaintiffs") on behalf of themselves and all others similarly situated (collectively the "Unnamed Plaintiffs") (Named Plaintiffs and Unnamed Plaintiffs collectively "Plaintiffs") filed a Collective Action Complaint under the New Mexico Minimum Wage Act ("Complaint") on March 19, 2010 with the State Court in an action entitled *Cruse, et al. v. St. Vincent Hospital*, Case No. D-0101-CV-2010 00932 (the "State Action").

## PROCEDURAL HISTORY

1.      On March 19, 2010, Plaintiffs filed the Complaint with the State Court. *State Court Docket, attached hereto as Exhibit A.*

2.      On March 23, 2010, Plaintiffs served the Complaint on Defendant. *Exhibit A.*

3.      On April, 22, 2010, Defendant removed the State Action to the United States District Court, District of New Mexico ("District Court"). *Case No. 1:10-cv-00394, Dkt. No. 1, 1-1 through 1-10.*

4.      On May 13, 2010, Plaintiffs filed a Motion for Remand ("Remand Motion"). *Case No. 1:10-cv-00394, Dkt. No.10.*

5.      On May 27, 2010, Defendant filed its Response in Opposition to Plaintiffs' Motion to Remand ("Remand Response"). *Case No. 1:10-cv-00394, Dkt. No.13.*

---

[2] Plaintiff Vivian Jeanette Hunter was dismissed from this action on November 12, 2010.

6.      On June 10, 2010, Plaintiffs filed their Reply in Support of Motion for Remand
        ("Remand Reply"). *Case No. 1:10-cv-00394, Dkt. No.16.*

7.      On July 27, 2010, the U.S. District Court issued its Memorandum Opinion and
        Order Granting Plaintiffs' Motion to Remand ("Remand Order"). *Case No. 1:10-cv-00394, Dkt. No.20.*

8.      On September 29, 2010, Defendant served its First Set of Interrogatories to
        Named Plaintiffs Shirley Cruse, Vivian Jeanette Hunter[3], Nora Garcia, Fonda
        Osborn, Nancy Perez-Fugere, Lillie Sandoval, Chip Upsal, and Gail Williams.
        *Defendant's Certificate of Service, attached hereto as Exhibit B.*

9.      On November 1, 2010, Named Plaintiffs Shirley Cruse, Nora Garcia, Fonda
        Osborn, Nancy Perez-Fugere, Lillie Sandoval, Chip Upsal, and Gail Williams
        served their Answers to Defendant's First Set of Interrogatories. *Plaintiffs'
        Certificate of Service, attached hereto as Exhibit C.*

## SECOND NOTICE OF REMOVAL ALLOWED AFTER RECEIPT OF OTHER PAPER FROM WHICH IT MAY BE ASCERTAINED THAT CASE IS REMOVABLE

"If the case stated by the initial pleading is not removable, a notice of removal may be
filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of
an amended pleading, motion, order or other paper from which it may first be ascertained that the
case is one which is or has become removable." 28 U.S.C. § 1446(b).

"As a general rule, once a case is remanded to state court, a defendant is precluded only
from seeking a second removal on the same ground. The prohibition against removal 'on the

---

[3] Plaintiff Vivian Jeanette Hunter was dismissed from this case on November 12, 2010.

same ground' does not concern the theory on which federal jurisdiction exists (i.e., federal question or diversity jurisdiction), but rather the pleading or event that made the case removable. *SWS Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 492 (5th Cir. 1996). "[T]he fact that a case was initially removed and remanded does not in of itself preclude removal a second time around. A defendant who fails in an attempt to remove on the initial pleadings can file a second removal petition when subsequent pleadings or events reveal a new and different ground for removal." *One Sylvan Road North Assoc. v. Lark International, Ltd.,* 889 F. Supp. 60, 62 (D. Conn. 1995). "The second paragraph of 28 U.S.C. § 1446(b) is designed to allow a defendant to remove a state action when it was not originally removable as stated by plaintiff's initial complaint, but has become removable due to the filing in state court of 'an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.'" *Id.* at 63; *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 68-69 (1996) ("In a case not originally removable, a defendant who receives a pleading or other paper indicating the post commencement satisfaction of federal jurisdictional requirements ... may remove the case to federal court within 30 days of receiving such information. § 1446(b)").

In *Camden Industries Co. v. Carpenters Local Union No. 1688*, a defendant union served interrogatories on a plaintiff company to elicit an indication that the company was in an industry affecting commerce in order to establish jurisdiction under the Labor Management Relations Act ("LMRA") because the initial complaint filed in state court contained no such indication. 246 F. Supp. 252, 255 (D. N.H. 1965). The court concluded that the plaintiff's answer to the interrogatories was the first 'paper' from which removal jurisdiction could be ascertained and

thus allowed the second removal petition, which was timely filed within the time limit imposed by 28 U.S.C. § 1446(b). *Id.*

Under Tenth Circuit law, the "right to remove a case to federal court is determined from allegations set forth in the initial pleading, 'or other paper from which it may first be *ascertained* that the case is one which is or has become removable ...' 28 U.S.C. § 1446(b)" *Akin v. Ashland Chemical*, 156 fed 1030, 1035 (10th Cir. 1998). (emphasis added by Tenth Circuit). Accordingly, for removal, the Tenth Circuit "requires clear and unequivocal notice from the pleading itself, or a subsequent 'other paper' such as an answer to an interrogatory." *Id.* at 1036. Further, the Tenth Circuit holds that "a defendant who actively invokes the jurisdiction of the state court and interposes a defense in that forum is not barred from the right to removal in the absence of adequate notice of the right to remove." *Id.*

In this case, Plaintiffs' Complaint omitted any information that there was a collective bargaining agreement that might allow Defendant to establish jurisdiction under the LMRA. Although Defendant attempted to demonstrate that there was jurisdiction under the LMRA sufficient to justify removal, Plaintiffs repeatedly asserted that their state law claims were "legally and factually independent of the collective bargaining agreements." *Remand Motion, pgs. 3, 11, 14; Remand Reply, pgs. 2, 7.*

In its Remand Order, the District Court noted that "Plaintiffs have not objected to any term or provision in the collective bargaining agreements." *Remand Order, pg. 8.* The District Court also noted that "[n]owhere in Plaintiffs' complaint do they mention the collective bargaining agreements, let alone object to a specific provision in those agreements." *Remand Order, pg. 8.* The District Court noting that it was a "close call" believed that Plaintiffs'

Minimum Wage Act claim did not require the Court to analyze the provisions of the collective

bargaining agreements." *Remand Order, pg. 6.* Accordingly, the Court concluded that "[b]ecause

Plaintiffs' state claims do not depend upon any provision of the collective bargaining

agreements, those claims are not preempted by § 301 of the Labor Management Relations Act."

*Remand Order, pg. 11.*

Thus, until Plaintiffs served their Answers to Defendant's interrogatories on November 1,

2010, Defendant's right to remove this case had not been clearly ascertained. Now that Plaintiffs

have voluntarily provided information through their answers to Defendant's interrogatories, it is

clear that Defendant's right to remove this case started running on November 1, 2010. *See*

*Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072, 1078 (10th Cir. 1999) (noting that

circumstances permitting removal must normally come about "as a result of a voluntary act on

the part of the plaintiff"); *DeBry v. Transamerica Corp.*, 601 F.2d 480, 486-88 (10th Cir. 1979)

(providing detailed analysis of the construction of 28 U.S.C. § 1446(b)).

### PLAINTIFFS' INTERROGATORY ANSWERS DEMONSTRATE RELIANCE ON COLLECTIVE BARGAINING AGREEMENT OBLIGATIONS AS A BASIS FOR THEIR CLAIMS

Following Defendant's first attempt to remove this case, Plaintiffs vigorously argued that

their claims were "not preempted because they are legally and factually independent of the

collective bargaining agreements." *Remand Motion, pgs. 3, 11, 14; Remand Reply, pgs. 2, 7.*

In their Remand Motion, Plaintiffs specifically asserted that:

> "Defendant has imposed upon Plaintiffs, through its policies and
> procedures, very specific obligations to maintain patient care. In many
> instances the duties associated with patient care are also prescribed by
> Plaintiffs licensure and professional responsibility requirements. As a
> consequence of these obligations, Plaintiffs may only take their thirty-

minute lunch breaks if the Defendant provides a relief employee to assume the identified obligations. The Defendant, however, rarely schedules or provides relief employees to assume the identified obligations." *Remand Motion, pg. 2.*

Plaintiffs were asked to "Identify each and every St. Vincent policy and procedure imposing patient care obligations upon Plaintiff that prevents Plaintiff from taking a 30-minute meal period ..." *Plaintiff Lillie Sandoval's Answers to Defendant's First Set of Interrogatories, attached hereto as Exhibit D, pg. 2; Plaintiff Fonda Osborn's Answers to Defendant's First Set of Interrogatories, attached hereto as Exhibit E, pg. 2.*

Plaintiff Lillie Sandoval[4] answered in part "The Union and Hospital CBA [Nurse Agreement], Article 8.04 Rest Periods and Article 8.05 Scheduling, #4 Purpose states 'to maintain harmony and cooperation, The Hospital's goals ... patient safety ...'", *Exhibit D, pg. 2.* Ms. Sandoval also stated in her answer "[t]he Contract [Nurse Agreement] calls for 2 nurses to be on the unit at all times." *Exhibit D, pg. 2.* Most notably, Ms. Sandoval cited only provisions in the collective bargaining agreement between the Union and the Hospital as imposing obligations that prevented her from taking a 30-minute meal period.

Plaintiff Fonda Osborn[5] answered in part "It is in the contract between St. Vincent and District 1199 NUHHCE [Nurse Agreement] that there must be two nurses on a Unit at all times. Most of the time only two nurses are assigned to my unit, In-patient Rehab, so this policy

---

[4] Lillie Sandoval is the District Treasurer for the National Union of Hospital and Health Care Employees ("NUHHCE"), District 1199NM AFSCME/AFL-CIO. *NUHHCE, District 1199NM AFSCME/AFL-CIO Officers and Staff Info web page located at http://www.nmhospitalworkersunion.com/?zone=/unionactive/officers.cfm ("Officers Info"), visited on November 30, 2010, attached hereto as Exhibit F, pg. 1.*

[5] Fonda Osborn is the District President for the National Union of Hospital and Health Care Employees, District 1199NM AFSCME/AFL-CIO. *Exhibit F, pg. 1.*

prevents me from taking a full meal break away from the unit." *Exhibit E, pg. 2*. Again, Ms. Osborn cited <u>only</u> provisions in the collective bargaining agreement between the Union and the Hospital as imposing obligations that prevented her from taking a 30-minute meal period.

Plaintiffs were also asked to "Describe, in as much detail as possible, each and every event during which any individual did or said something to discourage Plaintiff from taking a 30-minute meal period or discourage Plaintiff from seeking pay for work performed during any 30-minute meal period …" *Plaintiff Shirley Cruse's Answers to Defendant's First Set of Interrogatories, attached hereto as Exhibit G.*

Plaintiff Shirley Cruse[6] answered in part "Additionally, no provisions have ever been negotiated to provide for a 30-minute 'off-duty' meal break for me or my co-workers." *Exhibit G, pg. 3*. Ms. Cruse's reference to negotiation of provisions clearly refers to collective bargaining negotiations since Ms. Cruse and her co-workers are covered by the provisions of the Technical Agreement or other collective bargaining agreements between Defendant and her Union.

Plaintiffs' answers were made under oath. *Exhibit D, pg. 6; Exhibit E, pg. 9; Exhibit G, pg. 6*. Plaintiffs' answers directly contradict the assertions they made to the District Court that their claims were "legally and factually independent of the collective bargaining agreements." *Remand Motion, pgs. 3, 11, 14; Remand Reply, pgs. 2, 7*. Plaintiffs' answers clearly establish that provisions of collective bargaining agreements are inextricably intertwined with their state law claims.

---

[6] Shirley Cruse is the St. Vincent Tech Vice President to the Executive Board [Technical Bargaining Unit] for the National Union of Hospital and Health Care Employees, District 1199NM AFSCME/AFL-CIO. *Exhibit F, pg. 1*.

## CONDUCT OF PLAINTIFFS' UNION DEMONSTRATES THAT PLAINTIFFS' ACTION WAS FILED TO INFLUENCE COLLECTIVE BARGAINING BETWEEN THE UNION AND DEFENDANT

On or about September 3, 2010, Plaintiffs' Union publicly distributed a document dated September 1, 2010, which was titled "A Union Update on 'No Lunch' Pay" ("Handout"). *A Union Update on "No Lunch" Pay, dated September 1, 2010, attached hereto as Exhibit H.* As the Union was not a party to this litigation, the Handout alone did not provide a basis for removal since it was not a voluntary statement of Plaintiffs. *See Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072, 1078 (10th Cir. 1999) (noting that circumstances permitting removal must normally come about "as a result of a voluntary act on the part of the plaintiff"); *DeBry v. Transamerica Corp.*, 601 F.2d 480, 486-88 (10th Cir. 1979) (providing detailed analysis of the construction of 28 U.S.C. § 1446(b)). However as noted previously, Plaintiffs' answers to Defendant's interrogatories clearly provide a basis for removal.

Although the Handout, by itself, does not provide sufficient information to ascertain that Plaintiffs' state law claims are removable, the statements made by the Union in the Handout clearly demonstrate that Plaintiffs are using state law claims to influence collective bargaining between the Union and Defendant and circumvent federal labor law.

The Union made the following statements in the Handout.

- "Earlier in the year, we notified you that Barbara Roe – VP of HR presented a policy to the Union Leadership at the Labor-Management meeting whereby the Hospital wanted workers to begin clocking out and in for meal breaks." *Exhibit H, pg. 1.*
- "Upon learning of the Hospital's intent to implement this new clocking "out and in" policy for meal breaks, the Union Leadership met with our attorney [Shane Youtz] so we could learn the "ins and outs" of No Lunch Pay to find out what the law says." *Exhibit H, pg. 1.*

- "As a consequence, we requested that our attorney file a collaborative [sic] action lawsuit against the Hospital to collect all back compensation due. The lawsuit was filed on March 19, 2010." *Exhibit H, pg. 1.*

- The Hospital tried to move the case to federal court (a more favorable venue for them) **even though the Union alleged only state violations and filed the lawsuit at the state level.** *Exhibit H, pg. 1 (emphasis added).*

- "Our [the Union's] attorney is Shane Youtz he [sic] will be contacting workers. He's the person to talk with. **He's the attorney representing the Union on your behalf –** not anyone from the Hospital." *Exhibit H, pg. 1 (emphasis added).*

## FEDERAL QUESTION JURISDICTION IS PROPER

Plaintiffs successfully opposed removal chiefly on the basis of not disclosing in their Complaint that there were any collective bargaining agreements and on their repeated assertions that their state law claims were "legally and factually independent of the collective bargaining agreements" when the collective bargaining agreements were disclosed by Defendant. *Remand Motion, pgs. 3, 11, 14; Remand Reply, pgs. 2, 7.* However, when specifically asked what obligations were imposed upon Plaintiffs by Defendant's policies or that prevented or discouraged them from clocking "No Lunch," Ms. Sandoval and Ms. Osborn specifically referenced provisions of collective bargaining agreements and Ms. Cruse referred to collective bargaining negotiations. Plaintiffs' reliance on the collective bargaining agreements to support some of their allegations in their Complaint clearly demonstrates that provisions of the collective bargaining agreements between Plaintiffs' Union and Defendant are inextricably intertwined with their state law claims.

### LMRA § 301 Preemption Creates Federal Question Jurisdiction

"Suits for violation of contracts between an employer and a labor organization representing employees … may be brought in any district court of the United States having

jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a) ("§ 301").

"Generally, the 'well-pleaded complaint' rule requires that the federal question appear on the face of the plaintiff's properly pleaded complaint." *Garley v. Sandia Corporation,* 236 F.3d 1200, 1207 (10th Cir. 2001). However, there is an important corollary to the general rule. *Id.* "Under the 'complete preemption doctrine,' federal courts may exercise federal question jurisdiction over complaints that, although not presenting federal questions on their face, nonetheless present state law claims that are preempted by federal law. *Id.* (citing to *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987) (explaining that once "an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law")). "The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987).

There is extensive Supreme Court precedent that § 301 confers federal jurisdiction over collective bargaining disputes and also reflects the desire of Congress that there be uniform federal interpretation of collective bargaining agreements. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957) ("We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws."); *Teamsters v. Lucas Flour*, 369 U.S. 95, 103 (1962) ("The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute.").

"Over 30 years ago, this Court held that § 301 not only provides the federal courts with jurisdiction over controversies involving collective-bargaining agreements but also authorizes the courts to fashion a body of federal law for the enforcement of these collective bargaining agreements. Since then, the Court has made clear that § 301 is a potent source of federal labor law, for though state courts have concurrent jurisdiction over controversies involving collective-bargaining agreements, state courts must apply federal law in deciding those claims, and indeed any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301. State law is thus pre-empted by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements." *Steelworkers v. Rawson*, 495 U.S. 362, 368 (1990) (internal citations and quotations removed).

The Supreme Court "has made clear that the preemptive effect of § 301 is not limited to state suits alleging violations of labor contracts; rather, the interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." *Garley* at 1208 (internal citations omitted). Thus the analysis must focus on whether evaluation of Plaintiffs' claims is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). If the state law relied upon by Plaintiffs purports to define the meaning of the contract relationship, that law is pre-empted. *Id.* Tenth Circuit law, based on Supreme Court precedent, holds that a state law claim is preempted by § 301 if evaluation of the claim is "*inextricably intertwined* with consideration of the terms of the labor contract." *Garley v. Sandia Corp.*, 256 F.3d 1200, 1208

(10th Cir. 2001) (citing to *Lueck*) (emphasis added by Tenth Circuit). Accordingly, if the
resolution of Plaintiffs' state law claims requires interpretation of a collective bargaining
agreement, then their claims are preempted. *Id.* at 1209.

## Plaintiffs are Covered by Collective Bargaining Agreements ("CBAs") and Rely on the CBAs to Support Their Allegations

The Named Plaintiffs are all members of the National Union of Hospital and Health Care
Employees, District 1199NM AFSCME/AFL-CIO ("Union"). There are three collective
bargaining agreements between Defendant and the Union – the Nurse Agreement ("Nurse
CBA"), the Technical Agreement ("Technical CBA"), and the Service & Maintenance
Agreement[7] (Nurse CBA and Technical CBA are referred to collectively as the "CBAs").
Employees covered by the Nurse CBA are members of the Nurse Bargaining Unit. Employees
covered by the Technical CBA are members of the Technical Bargaining Unit. Shirley Cruse is
covered by the Technical CBA. All other Named Plaintiffs are covered by the Nurse CBA.

The CBAs contain a detailed and complex set of interrelated provisions that specify
various wage amounts, various premium pay amounts, terms that govern working hours,
overtime, meal periods, scheduling, and, most importantly, the rules for computing pay based on
the type of work performed, the time and/or shift during which such work is performed, and/or
the specific unit in which such work is performed. *Relevant portions of the Nurse CBA are
attached hereto as Exhibit I[8]; relevant portions of the Technical CBA are attached hereto as*

---

[7] There are no Named Plaintiffs covered by the Service & Maintenance Agreement.

[8] All dollar and percentage amounts have been redacted to preserve the confidentiality of
Defendant's proprietary business information. The names of specific employees grandfathered
into certain provisions have been redacted to protect their privacy.

*Exhibit J*[9]. Further, the CBAs also provide provisions governing the taking of meal periods. *Exhibit I, pgs. 10-11, 39; Exhibit J, pgs. 13, 29.*

Lillie Sandoval stated that "Article 8.04 Rest Periods and Article 8.05 Scheduling" of the Union and Hospital CBA [Nurse CBA] imposed obligations upon her that prevented her from taking a 30-minute meal period. *Exhibit D, pg. 2; Exhibit I, pgs. 10-13.* Ms. Sandoval also relied on portions of the overall Purpose and St. Vincent Hospital Goals sections of the Nurse CBA. *Exhibit D, pg. 2; Exhibit I, pg. 6.* Fonda Osborne relied upon language in Section 8.05 item #4 in Article 8 of the Nurse CBA that she asserts requires two nurses on duty at all times. *Exhibit D, pg. 2; Exhibit J, pg. 11.* Finally, Shirley Cruse referred to failure to negotiate provisions regarding a meal break. *Exhibit G, pg. 3.* The Technical CBA, which governs the terms and conditions of Ms. Cruse's work contains provisions regarding meal periods. *Exhibit J, pgs. 9, 29.*

Plaintiffs previously argued that § 301 could not preempt wage claims of employees who were not covered by a CBA. *Remand Motion, pg. 12.* However, this argument ignores the fact that all Named Plaintiffs are covered by CBAs and there has been no class certified that contains any employee or former employee who was not covered by a CBA. Thus only the Named Plaintiffs, who are all covered by CBAs, are proper parties to this action. As such, their state claims are preempted by § 301.

Since Plaintiffs specifically relied on certain provisions of the CBAs as support for their allegations, they have unequivocally linked the CBAs with their claims. Accordingly, Plaintiffs

---

[9] All dollar and percentage amounts have been redacted to preserve the confidentiality of Defendant's proprietary business information.

state law claims are preempted by § 301 because there are multiple CBA provisions that need to
be interpreted to resolve Plaintiffs claims.

**Plaintiffs State Law Statutory Wage Claims are Preempted by § 301**

In resolving a wages and compensation claim, the Tenth Circuit held that in order to
determine what work a plaintiff performed, when he worked, what wages he was actually paid,
whether he was underpaid, and if so the amount of any shortfall, the court would have to
consider the provisions of the collective bargaining agreement that governed all of these pay
issues. Accordingly, the Tenth Circuit held that because the plaintiff's wage and compensation
claim was "substantially dependent on analysis of the wage and compensation provisions of the
collective bargaining agreement, that claim [was] preempted by federal labor law." *Mowry v.
United Parcel Service*, 415 F.3d 1149, 1157 (10th Cir. 2005).

In a remarkably similar state wage and hour collective action in Massachusetts, the
plaintiffs alleged that Caritas Christi ("Caritas"), a hospital, maintained policies that deprived its
employees of regular and overtime compensation because Caritas automatically deducted half-
an-hour for a meal break but failed to ensure that employees actually received that break. *Pruell
et al. v. Caritas Christi et al.*, 2010 U.S. Dist. LEXIS 101770, *2 (D. Mass. September 27, 2010)
(appealed October 25, 2010). The district court held that resolution of the plaintiffs' state law
wage claims would require the court to "apply multiple CBA provisions to establish what the
plaintiffs' wage rates would be." *Id.* at *9. Accordingly the district court held that the plaintiffs'
statutory wage claims were preempted by § 301. *Id.* at *11.

In this case, Plaintiffs allege claims for unpaid wages and/or overtime wages under the New Mexico Minimum Wage Act ("NMMWA") (NMSA § 50-4-19[10] *et seq.*) and claims for unjust enrichment. *Complaint, ¶¶ 17-21, 22-26.*

"An employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's *regular hourly rate of pay* for all hours worked in excess of forty hours." NMSA § 50-4-22(D) (emphasis added). New Mexico does not define the "regular hourly rate of pay." A definition of "regularly hourly rate of pay" that can be reasonably applied to Plaintiffs' claim for overtime wages is based on the definition of "regular rate" defined by the U.S. Department of Labor contained in 29 C.F.R. § 778.108. Under this regulation, the regular rate of pay "cannot be left to a declaration by the parties" and requires inclusion in the regular rate "all remuneration for employment paid to, or on behalf of the employee except for payments specifically excluded" by 29 C.F.R. § 778.200[11]. 29 C.F.R. § 778.108. Thus, a determination of regular rate necessarily requires interpretation of the CBA because the regular rate at which each employee is paid changes weekly based on the actual scheduling, type of work performed and various pay components received by each employee that are governed solely by the CBAs. Any other determination of regular rate would necessarily violate the Fair Labor Standards Act ("FLSA").

---

[10] Incorrectly cited as NMSA § 50-4-1 *et seq.* in the Complaint.

[11] Such sums include 1) payments made as gifts, 2) payments made for occasional periods in which no work is performed, 3) recognition payments made at the sole discretion of the employer, 4) retirement or pension plan payments, 5) extra compensation provided by a premium rate for hours worked in excess of 8 hours in a day or above the employee's normal work hours, and 6) extra compensation provided by a premium rate for hours worked on weekends, holidays or for the sixth or seventh days in a week.

The amount of overtime pay due any employee is covered by the Nurse CBA and the Technical CBA. *Exhibit I, § 8.03; Exhibit J, § 8.03*. Both CBAs include a provision that overtime is to be paid in accordance to the specifications outlined in the Fair Labor Standards Act, which clearly indicates reliance on the FLSA. *Exhibit I, § 8.03; Exhibit J, § 8.03*.

The CBAs contain a complex set of provisions regarding the effect on compensation of employees based on a number of complex intermingled rules and provisions that cross reference each other. To illustrate the complexity of determining the regular rate of pay and the need to interpret the provisions of the CBAs, a few of the pay premiums provided by the Nurse CBA that have to be included in the regular rate of pay are provided below. The examples below are not an exhaustive list of the various pay premiums and interrelated provisions of the Nurse CBA that would have to be consulted to determine the regular rate of pay for each week.

- The Nurse CBA provides for additional per hour pay amounts based on various certifications. This pay is not automatic and must be applicable to the unit on which the employee works based on a determination by Defendant's Chief Nursing Officer. *Exhibit I, pg. 22, § 28.03*.

- The Nurse CBA provides for additional per hour pay amounts based on the specific hours of the day that work is performed and the shift that the employee is assigned to work. *Exhibit I, pg. 24, § 28.06*.

- The Nurse CBA provides for additional per hour pay amounts based on the employee performing work as a charge nurse (which is defined by the Nurse CBA) if the employee works on certain specified units in the Hospital. *Exhibit I, pg. 24, § 28.07*.

- The Nurse CBA provides for additional per hour pay amounts based on specific certifications, years of experience as a registered nurse, years of experience as a registered nurse in a specific unit or department and the specific unit or department in which the employee works. *Exhibit I, pg. 25-26, § 28.09*.

- The Nurse CBA provides for a lump sum payment for each pay period for each employee who is a certified interpreter if the employee receives a paycheck for that pay period. *Exhibit I, pg. 26, § 28.10*.

- The Nurse CBA provides for a payment made quarterly that is based on the number of hours worked for employees who work indefinite night shifts or weekend shifts with a specified minimum number of hours. *Exhibit I, pg. 26, § 28.11.*

- The Nurse CBA provides for premium pay if staffing falls below certain negotiated ratios, which could change at any time by agreement of the Union and Defendant. The amount of time before the premium pay provision takes effect is determined by the reason that staffing falls below the negotiated ratio. The amount of time that the premium pay provision is in effect depends on the time that the provision becomes effective and the time that the staffing ratio changes by adding additional staff or transferring patients. *Exhibit I, pg. 12, § 8.05, #5.*

- The Nurse CBA provides for premium pay if employees work more than two weekends in a row unless the employee waives the scheduling objective or if hours worked were on voluntary call. Further, the shift that employees work determines which days constitute a weekend. *Exhibit I, pg. 14, § 8.08.*

- The Nurse CBA provides for premium pay if employees do not receive an unbroken rest period of a specified number of hours, which depends upon the length of the shift worked. However this provision may be waived in writing by each individual employee and the starting time of the rest period depends on the end of the scheduled shift and not on the actual work time after the end of a scheduled shift. *Exhibit I, pg. 15, § 8.09.*

- The Nurse CBA provides certain payments for employees who are required to be on call. *Exhibit I, pgs. 15-16, § 8.12.*

- The Nurse CBA provides for premium pay and certain travel time payments at different rates if an employee is called to work outside of the employee's regular work schedule. This section also provides that the travel time payment is not considered time worked. However, this section does not apply to employees classified as per diem (defined by § 8.01 and § 37.01 of the Nurse CBA). *Exhibit I, pg. 16, § 8.13A.*

- The Nurse CBA provides for various hourly pay amounts for an employee who has satisfied his/her work requirements under the Nurse CBA who is called back to work with less than 24 hours notice if that employee has not been placed on call. This provision also applies to an employee who is asked to stay and work beyond his/her completed shift. The premium pay amounts vary by shift. Further this section is interpreted differently if the employee is a per diem employee. *Exhibit I, pg. 16, § 8.13B.*

- The Nurse CBA provides for premium pay amounts if an employee works beyond the scheduled amount of time in a week. Various non-work time such as holidays, personal days, and leave time count towards determining whether the scheduled amount of time has been worked. *Exhibit I, pg. 16, § 8.13C.*

A further illustration of the complexity of determining the regular rate of pay and the need to interpret the provisions of the CBAs applicable to Plaintiffs' claims, is shown by a few of the pay premiums provided by the Technical CBA that have to be included in the regular rate of pay, which are provided below. Again, the examples below are not an exhaustive list of the various pay premiums and interrelated provisions of the Technical CBA that would have to be consulted to determine the regular rate of pay for each week.

- The Technical CBA provides for additional per hour pay amounts based on various certifications. This pay is not automatic and must be approved by Defendant's Chief Nursing Officer/Chief Operating Officer. *Exhibit J, pg. 16, § 28.03.*

- The Technical CBA provides for additional per hour pay amounts based on the specific hours of the day that work is performed and the shift that the employee is assigned to work. *Exhibit J, pg. 17, § 28.05.*

- The Technical CBA provides for additional per hour pay amounts based on assignment of charge responsibility (which is defined by the Technical CBA) to an employee if the employee works on certain specified units in the Hospital. *Exhibit j, pg. 17, § 28.06.*

- The Technical CBA provides for a lump sum payment for each pay period for each employee who is a certified interpreter if the employee receives a paycheck for that pay period. *Exhibit J, pg. 19, § 28.13.*

- The Technical CBA provides for a payment made quarterly that is based on the number of hours worked for employees who work indefinite night shifts or weekend shifts with a specified minimum number of hours. *Exhibit J, pg. 19, § 28.14.*

- The Technical CBA provides basic provisions regarding meal periods. However Addendum H to the Technical CBA (incorrectly identified as Addendum J in § 8.04) provides different meal period provisions for employees working in certain departments including specifically eliminating the "No Lunch" automatic deduction complained of by Plaintiffs for employees working in certain departments. *Exhibit J, pg. 9, § 8.04, pg. 29, Addendum H.*

- Section 8.05, item #2 in the Technical CBA provides for premium pay if staffing falls below certain negotiated ratios, which could change at any time by agreement of the Union and Defendant. The amount of time that the premium pay provision is in effect depends on the time that the provision becomes effective and the time that the staffing ratio changes by adding additional staff or transferring patients. *Exhibit J, pgs. 9-10, § 8.05.*

- The Technical CBA provides for premium pay if an employee works more than a certain number of consecutive days depending upon the shift length, which is negotiated separately, unless the employee volunteers to work extra days or unless the work is mandatory on call time. *Exhibit J, pg. 10, § 8.07.*

- The Technical CBA provides for premium pay if employees work more than two weekends in a row unless the employee waives the scheduling objective or if hours worked were on voluntary call. Further, the shift that employees work determines which days constitute a weekend. *Exhibit J, pgs. 10-11, § 8.08.*

- The Technical CBA provides for premium pay if employees do not receive an unbroken rest period of a specified number of hours, which depends upon the length of the shift worked. However this provision may be waived in writing by each individual employee and the starting time of the rest period depends on the end of the scheduled shift and not on the actual work time after the end of a scheduled shift. *Exhibit J, pg. 10, § 8.09.*

- The Technical CBA provides certain payments for employees who are required to be on call. *Exhibit J, pg. 11, § 8.12.*

- The Technical CBA provides for premium pay and certain travel time payments at different rates if an employee is called to work outside of the employee's regular work schedule. This section also provides that the travel time payment is not considered time worked. However, this section does not apply to employees classified as per diem (defined by § 8.01 and § 37.01 of the Technical CBA). *Exhibit J, pg. 12, § 8.13A.*

- The Technical CBA provides for various premium pay amounts for an employee who has satisfied his/her work requirements under the Technical CBA who is called back to work with less than 24 hours notice if that employee has not been placed on call. This provision also applies to an employee who is asked to stay and work beyond his/her completed shift. The premium pay amounts vary by shift. Further this section is interpreted differently if the employee is a per diem employee. *Exhibit J, pg. 12, § 8.13B.*

- The Technical CBA provides for premium pay amounts if an employee works beyond the scheduled amount of time in a week. Various non-work time such as holidays, personal days, and leave time count towards determining whether the scheduled amount of time has been worked. *Exhibit J, pgs. 12-13, § 8.13C.*

The Service & Maintenance CBA was not included as an exhibit to this Second Notice because none of the Named Plaintiffs are in that bargaining unit. However, if any employee were covered by the Service & Maintenance CBA, there are additional provisions, some of which are similar to the provisions noted above for the Nurse CBA and Technical CBA, which would

provide various payments that depend on the time, scheduling, and units on which the employee works.

Even a cursory look at the CBAs shows the complexity of determining a regular rate of pay for any single employee in any given week. Computation of any payments that are allegedly due for work allegedly performed during a meal period would require an exhaustive individual inquiry into:

- the pay actually received by each putative class member;
- the time records maintained by Defendant;
- the scheduling records maintained by Defendant;
- the status of the employee as defined by the CBAs;
- a determination of the type of work performed as defined by various CBA provisions allegedly performed during meal periods; and
- the interrelated CBA provisions governing what pay and pay premiums are due for the specific work done by each person on each day in each work week.

Plaintiffs relied on *Self v. United Parcel Service*, 1998-NMSC-046, 970 P.2d 582 in their Remand Motion. In *Self*, the court determined that "the mere need to 'look to' the collective-bargaining agreement for damages computation [was] no reason to hold the state-law claim defeated by § 301." *Self v. United Parcel Service*, 1998-NMSC-046, ¶ 18, 970 P.2d 582.

Here, wholly different from the fact situation in *Self*, nearly identical to the fact situation in *Caritas*, and similar to the fact situation in *Mowrey*, there is no way to resolve Plaintiffs' state wage claims without resorting to a detailed interpretation of the complex interrelated provisions of the CBAs governing meal periods, type of work, time of work, patient census in the Hospital in each unit on each shift, number of employees working in each unit on each shift, position of the employee performing work, certifications held by the employee performing work and the pay

premiums provided by the CBAs for each type of work performed by a specific employee on a specific date at a specific time, which will vary for each time work was allegedly performed.

## REMOVAL IS TIMELY

Plaintiffs' Answers to Defendant's Interrogatories were received by Defendant on November 1, 2010. Defendant filed this Second Notice within 30 days after receiving Plaintiffs' Interrogatory Answers containing information that allowed Defendant to ascertain that this Action was removable. Accordingly this Second Notice is timely filed pursuant to the provisions of 28 U.S.C. § 1446(b).

## ALL OTHER REMOVAL REQUIREMENTS ARE MET

This Court is the appropriate venue for removal of Plaintiff's State Action, pursuant to 28 U.S.C. § 1441(a), which permits removal of any civil action brought in any state court in which the District Courts of the United States have original jurisdiction, to the District Court for the district and division embracing the place where such action is pending.

A Civil Cover Sheet as required by D.N.M. LR-Civ. 3.1 is attached to this Notice. Pursuant to 28 U.S.C. § 1446(a), copies of all process and pleadings served upon Defendant are attached to this Notice as Exhibit K. Defendant has requested copies of the State Court records and proceedings, which copies shall be provided to the Court within the time allotted by D.N.M. LR-Civ. 81.1(a). A copy of the docket sheet from the State Action is attached hereto as Exhibit A. Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly file a Notice of Notice of Removal and a copy of this Notice with the First Judicial District Court, State of New Mexico, County of Santa Fe and serve a copy upon Plaintiffs' counsel of record.

Respectfully submitted,
JACKSON LEWIS LLP

By: _____

    Danny W. Jarrett
    jarrettd@jacksonlewis.com
    James L. Cook
    cookj@jacksonlewis.com

4300 San Mateo Blvd. NE, Ste. B-260
Albuquerque, NM 87110
P: 505-878-0515
F: 505-878-0398
**COUNSEL FOR DEFENDANT**

We hereby certify that we served, via first-class mail, properly addressed and postage prepaid, a true and correct copy of the foregoing pleading on this 1st day of December, 2010 to:

Shane C. Youtz, Esq.
shane@youtzvaldez.com
Marianne Bowers Lopez, Esq.
marianne@youtzvaldez.com

YOUTZ AND VALDEZ, P.C.
900 Gold Ave. SW
Albuquerque, NM 87102
P: 505-244-1200
F: 505-244-9700
**COUNSEL FOR PLAINTIFFS**

JACKSON LEWIS LLP

By: _____
    James L. Cook