IN THE UNITED STATES DISTRICT COURT

DISTIRCT OF NEW MEXICO

SHIRLEY CRUSE, NORA GARCIA,
FONDA OSBORN, NANCY PEREZ-FUGERE,
LILLIE SANDOVAL, CHIP UPSAL, and
GAIL WILLIAMS, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

vs.                                         Civ. No. 10-1140 JP/RHS

ST. VINCENT HOSPITAL, d/b/a CHRISTUS
ST. VINCENT REGIONAL MEDICAL CENTER,
a New Mexico Non-Profit Corporation,

        Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

        On April 11, 2011, the Court granted Plaintiffs' Second Motion for Remand (Doc. No. 7) and determined that Plaintiffs were entitled to reasonable attorneys' fees and costs resulting from the second removal. *See* Memorandum Opinion and Order (Doc. No. 15). Defendant now challenges the reasonableness of the attorneys' fees and costs which Plaintiffs seek.

*A. Procedural Background*

        On March 19, 2010, Plaintiffs filed a collective action in the New Mexico First Judicial District Court, County of Santa Fe, against their employer Defendant St. Vincent Hospital d/b/a Christus St. Vincent Regional Medical Center because Plaintiffs allegedly worked without compensation during unpaid lunch breaks. Plaintiffs assert that the Defendant violated the New Mexico Minimum Wage Act and that Defendant has been unjustly enriched by its actions. On April 22, 2010, Defendant removed the case to federal district court where the case was assigned to the Honorable United States District Court Judge William "Chip" Johnson, Civ. No. 10-394

WJ/RLP.  Defendant based the removal on the contention that §301 of the Labor Management

Relations Act (LMRA), a federal law governing union issues, completely preempts Plaintiffs'

state claims and, therefore, provides a basis for federal question jurisdiction.  Defendant argued

that the state claims could only be resolved by interpreting the nurses' and technical workers'

collective bargaining agreements (CBAs), which Defendant had entered into with the National

Union of Hospital and Healthcare Employees, District 1199 NM.  On May 13, 2010, Plaintiffs

filed Plaintiffs' Motion for Remand (Doc. No. 10) in which Plaintiffs asserted that the LMRA

does not preempt the state claims because the state claims are independent of any CBA which

might cover Plaintiffs' employment with Defendant.  Judge Johnson agreed with Plaintiffs and

granted Plaintiffs' Motion for Remand on July 27, 2010 and remanded the case back to state

court.  Memorandum Opinion and Order Granting Plaintiffs' Motion to [sic] Remand (Doc. No.

20), Civ. No. 10-394 WJ/RLP.

On December 1, 2010, Defendant filed Defendant's Second Notice of Removal (Doc.

No. 1) which commenced this federal court case.  Defendant contended that the case had become

removable under 28 U.S.C. §1446(b)[1] as a result of certain answers by Plaintiffs to Defendant's

First Set of Interrogatories.  The answers were served on Defendant after Judge Johnson had

remanded the case to state court.  According to Defendant, those answers demonstrated that the

LMRA preempts Plaintiffs' state claims and, thereby, establishes federal question jurisdiction.

Plaintiffs responded to Defendant's Second Notice of Removal by filing Plaintiffs' Second

---

[1]Section 1446(b) states, in pertinent part, that "[i]f the case stated by the initial pleading
is not removable, a notice of removal may be filed within thirty days after receipt by the
defendant, through service or otherwise, of a copy of an amended pleading, motion, order or
other paper from which it may first be ascertained that the case is one which is or has become
removable...."

Motion for Remand in which Plaintiffs argued that the second removal was improper and that if the Court again remanded the case to state court, Plaintiffs should be awarded reasonable attorney's fees and costs under 28 U.S.C. §1447(c).  The Court agreed with Plaintiffs.  On April 11, 2011, the Court granted Plaintiffs' Second Motion for Remand and ordered Defendant to "pay Plaintiffs' reasonable attorney's fees and costs incurred as a result of the second removal." Memorandum Opinion and Order (Doc. No. 15) at 10.  The Court further ordered that:  1) Plaintiffs' counsel must file and serve on Defendant an affidavit itemizing attorneys' fees and costs by April 15, 2011; 2) if Defendant disputes the reasonableness of the attorneys' fees and costs, Defendant must file a brief opposing the amount of attorneys' fees and costs by April 29, 2011; and 3) Plaintiffs had until May 10, 2011 to file a response to that opposition brief.  *Id*. at 11.

Plaintiffs, in fact, filed an Affidavit of Marianne Bowers (Doc. No. 18) on April 15, 2011 initially seeking a total of $33,743.75 in attorney's fees:  attorney Marianne Bowers of Youtz & Valdez, P.C. charged $450 an hour for 52.75 hours of work; attorney Shane Youtz of Youtz & Valdez, P.C. charged $450 an hour for 21.00 hours of work; a law clerk working for Youtz & Valdez, P.C. charged $125 an hour for 4.00 hours of work; and a paralegal working for Youtz & Valedz, P.C. charged $75 an hour for 0.75 hours of work.  Youtz & Valdez, P.C. also charged $260.35 for additional costs:  $8.56 for faxes, $11.04 for PACER-NET online transactions, and $240.75 for Westlaw online legal research.  The total state gross receipts tax amounted to $2,362.06.  On April 28, 2011, Defendant filed a Memorandum Opposing the Amount of Attorneys' Fees Requested (Doc. No. 19) and on May 10, 2011, Plaintiffs filed Plaintiffs' Reply on Their Fee Petition (Doc. No. 20).  Mr. Youtz agrees in Plaintiffs' Reply on Their Fee Petition

to withdraw 2.00 hours from his hours[2] but Mr. Youtz seeks an additional $2,812.50 in

attorney's fees for 6.25 hours he spent in preparing Plaintiffs' Reply on Their Fee Petition.

B.  Discussion

Defendant argues that the attorneys' fees which Mr. Youtz and Ms. Bower seek are

unreasonable because the hours they expended as a result of the second removal are

unreasonable and the rate of $450 an hour is likewise unreasonable.  Defendant does not dispute

the reasonableness of the fees charged by the law clerk and the paralegal.  Defendant, however,

argues that the additional charges for faxes, PACER-NET online transactions, and Westlaw

online legal research are unreasonable because Plaintiffs did not provide any documentation to

support those charges.

    1.  Reasonable Attorneys' Fees

A determination of reasonable attorney's fees starts with a calculation of the "lodestar"

amount.  See Huffman v. Saul Holdings Ltd. Partnership, 262 F.3d 1128, 1134-35 (10th Cir.

2001) (an award of attorney's fees under §1447(c) must be reasonable); Albion Pacific Property

Resources, LLC v. Seligman, 329 F.Supp.2d 1163, 1166 (N.D. Cal. 2004) (employing lodestar

analysis in awarding attorney's fees under §1447(c)).  The lodestar analysis involves multiplying

the reasonable hours the attorney spent working on the case by a reasonable hourly rate.  Case v.

Unified School Dist. No. 233, Johnson County, Kan., 157 F.3d 1243, 1249 (10th Cir. 1998)

(citation omitted).  A "reasonable rate" is defined as the prevailing market rate in the community

in question for an attorney of similar experience.  Blum v. Stenson, 465 U.S. 886, 895 (1984).

---

[2]Although Mr. Youtz states in Plaintiffs' Reply on their Fee Petition at 10 that he will
withdraw 2.25 hours, he states in the Affidavit of Shane Youtz (Doc. No. 20-1) at ¶15 that he is
withdrawing only 2.00 hours.  The Court is bound by the sworn statement in the Affidavit of
Shane Youtz and will consider 2.00 hours withdrawn.

Moreover, the party seeking attorney's fees bears the burden of showing that both the hours spent working on the case and the hourly rate are reasonable. *Case*, 157 F.3d at 1249 (citation omitted). To successfully carry out that burden, the party seeking attorney's fees must submit to the Court "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* at 1250 (citation omitted). The Tenth Circuit Court of Appeals has recognized the lodestar amount as presumptively reasonable. *Homeward Bound, Inc. v. Hissom Memorial Ctr.*, 963 F.2d 1352, 1355 (10th Cir.1992).

*a. Reasonable Hours Expended by Ms. Bowers and Mr. Youtz*

Defendant raises several issues with respect to the hours submitted by Ms. Bowers and Mr. Youtz. First, the Defendant notes that the hours are presented in the form of an invoice with entries calculated in 15 minute intervals. Defendant contends that the invoice is not a contemporaneous time record. Curiously, Plaintiffs do not respond to this contention. Plaintiffs' failure to respond to this particular contention could be deemed as consent to that contention. *See* D.N.M. LR-Cv 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."). Although the Court is tempted to deny Plaintiffs' request for attorneys' fees and costs because Plaintiffs failed to demonstrate that the invoice was based on contemporaneous records, it is possible for an invoice to be generated by computerized time records which are, in fact, prepared contemporaneously. *See Internet Law Library, Inc. v. Southridge Capital Management LLC*, __ F.Supp.2d ___, 2010 WL 3290965 *3 (S.D.N.Y.) ("[T]he invoices submitted by Cootes Drive clearly indicate that the bills were generated monthly based on entries into computer timesheets, which satisfies the requirement of 'contemporaneous' records to the extent that requirement is

5

applicable."). Consequently, the Court will assume that the invoice represents contemporaneous time records.

Second, Defendant generally maintains that the invoice entries contain block billing which makes it impossible to decide what amount of time was spent on which tasks. The Court notes that the Tenth Circuit Court of Appeals "has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing." *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). Accordingly, the Court will examine the individual entries which Defendant specifically objects to.

Third, Defendant takes issue with the December 14, 2010 entry for work performed by Ms. Bowers. That entry states that Ms. Bowers spent 6.75 hours on "[e]xtensive search for case law to support theory that a second removal triggered by discovery answers is insufficient in a preemption case, including review of cases on ERISA preemption." Invoice #4584 (Doc. No. 18-1) at 1. Defendant argues that this entry is improper because "[r]emoval was based on LMRA preemption and ERISA preemption cases would not be applicable." Memorandum Opposing the Amount of Attorneys' Fees Requested at 11. Ms. Bowers explains that the she found an ERISA preemption case that was relevant to this case since it involved, like here, a second removal. In fact, the Court cited to that case in its April 11, 2011 Memorandum Opinion and Order at 6 as an example of a case which "illustrates the interplay between a second removal and §1447(c) in a case somewhat similar to this one." Accordingly, Ms. Bowers' research of ERISA preemption cases was reasonable.

Fourth, Defendant disputes the December 22, 2010 entry for 3.75 hours of work performed by Mr. Youtz. That entry states: "Review removal research relating to discovery issues; review all file materials relating to discovery dispute, including requests, responses and

correspondence; telephone conversation with opposing counsel; prepare notes of conversation; prepare review plan based upon information provided."  Invoice # 4584 at 2.  Defendant contends that this entry relates to a 24 minute telephone conversation Mr. Youtz had with Defendant's attorney, James Cook, concerning Plaintiffs' First Set of Requests for Production. Plaintiffs' First Set of Requests for Production were served on Defendant after the first remand and prior to the second removal.  The issues discussed, according to Mr. Cook's notes, related to the volume and type of electronically stored information requested by Plaintiffs.  Defendant contends that the work described in the December 22, 2010 entry was not incurred as a result of the second removal.

Plaintiffs argue that the work concerning Plaintiffs' First Set of Requests for Production was related to the second removal because, after Defendants removed the case for a second time, Plaintiffs had to consider moving to compel discovery under the Federal Rules of Civil Procedure which has different deadlines than the state rules as well as a meet and confer procedure.  Plaintiffs also argue that they had to conduct special research to address the issue of how to compel discovery in federal court when that discovery was first sought in a state case. Moreover, Plaintiffs contend that the discovery they sought was needed to prepare a federal motion for collective action.

The Court rejects Plaintiffs' arguments regarding the December 22, 2010 entry about compelling discovery for several reasons.  First, the December 22, 2010 entry does not mention that any of the work related to the possible filing of a motion to compel.  Second, although the December 22, 2010 entry refers to a review of removal research related to discovery, there is no way to determine from that entry how much time was spent on that task or what specific subjects were reviewed.  Without that information, the Court cannot decide if it was reasonable for Mr.

Youtz to perform that task.  Third, even if discovery from Plaintiffs' First Set of Requests for

Production could be used to prepare a federal motion for collective action, it is clear that the

original purpose of Plaintiffs' First Set of Requests for Production, which was served on

Defendant prior to the second removal, was unrelated to the second removal.  Finally, the Court

observes that Plaintiffs do not specifically address Defendant's allegation that the work

referenced in the December 22, 2010 entry concerned only the limited issues of the volume and

type of electronically stored information, issues not created by the second removal and predating

the second removal.  Plaintiffs have failed to convince the Court that the work on discovery

documented in the December 22, 2010 entry would not have occurred but for the second

removal.  The Court will, therefore, disallow the 3.75 hours reflected in the December 22, 2010

entry.

Fifth, Defendant asserts that the December 28, 2010 entry for 4.25 hours of work

performed by Mr. Youtz is inappropriate.  That entry states: "Review remand motion; several

telephone conferences with clients regarding status of case; comprehensive review of law

relating to privilege and confidentiality; review discovery requests and responses and subsequent

correspondence regarding disputes."  Invoice #4584 at 2.  Although Defendant maintains that the

review of the remand motion is properly billable, Defendant further contends that the time for

that entire entry should be disallowed because the telephone conferences were generally about

the case, the discovery issues existed prior to the second removal, and the block billing makes it

impossible to determine what amount of time Mr. Youtz spent on each task.  Mr. Youtz

concedes that the December 28, 2010 entry could be considered block billing and will instead

charge only 2.00 hours for reviewing privilege and confidentiality agreements in other cases and

for reviewing those subjects in Fair Labor Standards Act (FLSA) treatises.  The issue of

8

privilege and confidentiality agreements, however, arose with respect to Plaintiffs' First Set of

Requests for Production which were served on Defendant prior to the second removal.  Mr.

Cook specifically raised the issue of privilege and confidentiality agreements in a letter sent to

Plaintiffs' counsel almost a month prior to Defendant filing its second notice of removal on

December 1, 2010.  Hence, the issue of privilege and confidentiality agreements did not arise as

a result of the second removal.  The Court will not allow Mr. Youtz to recover any attorney's

fees for work performed on December 28, 2010.

Sixth, Defendant challenges the January 17, 2011 entry for 1.25 hours of work performed

by Mr. Youtz.  The January 17, 2011 entry states: "Conferences with clients regarding status of

case; provided detailed explanation relating to status of production and status of removal."

Invoice #4584 at 2.  Defendant notes that block billing prevents the Court from determining the

amount of time spent on each task.   Although discussions regarding the status of Plaintiffs'

requests for production of documents made prior to the second removal did not result from the

second removal, it is reasonable to conclude that but for the second removal Mr. Youtz would

not have spent additional time speaking to his clients regarding the status of the removal.  The

Court will, therefore, reduce the time for this entry to 0.65 of an hour.

Seventh, Defendant complains about the accuracy of the March 3, 2011 entry for work

performed by Ms. Bowers.  That entry indicates that Ms. Bower spent 0.75 of an hour on a

telephone conference with Mr. Cook regarding a "meet and confer" and that Ms. Bowers

reviewed a draft of the Joint Status Report (JSR).  Mr. Cook notes that according to his phone

record the telephone conversation with Ms. Bowers lasted only eight minutes and that the

Defendant did not provide a draft JSR to Plaintiffs until March 7, 2011.  Ms. Bowers admits that

she did not review a draft of the JSR on March 3, 2011.  Instead, Ms. Bowers reviewed an email

from Mr. Cook (with an accompanying email from Mr. Cook to Mr. Youtz) regarding the draft JSR which would be sent on March 7, 2011.  Ms. Bowers also observes that she failed to bill 0.50 of an hour for reviewing the draft JSR on March 7, 2011.  Ms. Bowers' clarification of the March 3, 2011 entry allows the Court to conclude that Ms. Bower properly billed 0.75 of an hour.

Eighth, Defendant asserts that the time spent by Ms. Bowers and Mr. Youtz conducting legal research and review was excessive and most likely duplicative, especially considering Ms. Bowers' statement in her affidavit that she and Mr. Youtz "each have between 15 and 20 years experience as trial lawyers and previous FLSA trial experience."  Affidavit of Marianne Bowers at ¶12.  Defendant suggest that the Court disallow 90% of the hours claimed by Mr. Youtz and disallow 40% of the hours claimed by Ms. Bowers.

Ms. Bowers claims that she spent a total of 25.75 hours on legal research prior to filing the Plaintiffs' Second Motion for Remand[3] while Mr. Youtz claims to have spent 7.75 hours on Plaintiffs's Second Motion for Remand.[4]  The Court notes that Plaintiffs' law clerk also spent 2.50 hours on legal research in connection with Plaintiffs' Second Motion for Remand.  The Court simply cannot discern from the rather vague entries if or to what extent the legal research and review of legal research by Mr. Youtz may have been duplicative of research performed by Ms. Bowers and/or the law clerk.  Moreover, the Court cannot discern how much of Mr. Youtz's research was actually background research which is not billed to a client and, therefore, not

---

[3]*See* Entries on December 2, 2010 (3.25 hours); December 11, 2010 (3.75 hours); December 12, 2010 (5.75 hours); December 13, 2010 (6.25 hours); and December 14, 2010 (6.75 hours).

[4]*See* Entries on December 9, 2010 (.75 hours); December 13, 2010 (3.75 hours); and December 17, 2010 (3.25 hours).

recoverable from the Defendant.  *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds*, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987) (time for reading background cases and other materials is absorbed into a private firm's overhead and not charged to clients).  Furthermore, the block billing on Mr. Youtz's December 17, 2010 entry does not breakdown how much time he spent reviewing and modifying the draft of Plaintiffs' Second Motion for Remand and how much time he spent on reviewing case law on Plaintiffs' Second Motion for Remand.  Because Ms. Bowers performed most of the legal research and Plaintiffs have failed to show exactly how much time Mr. Youtz spent on legal research, that Mr. Youtz's research was not duplicative, and that his legal research was not, in fact, background research, the Court will disallow the 7.75 hours claimed by Mr. Youtz.  In addition, the Court finds that it was reasonable for Ms. Bower to have spent 25.75 hours researching the basis for Plaintiffs' Second Motion for Remand.

Defendant also asserts that it is impossible to determine how much of Mr. Youtz and Ms. Bowers' legal research in preparing the Plaintiffs' reply to Defendant's response to Plaintiffs' Second Motion for Remand was duplicative.  Ms. Bowers spent 12.50 hours researching and writing the reply[5] and Mr. Youtz spent another 2.25 hours on researching remand issues raised in the reply, reviewing cases cited in the Defendant's response to Plaintiffs' Second Motion for Remand, and modifying the reply.[6]  Again, the vagueness of the entries and the block billing make it difficult to decide how much time was actually spent performing legal research or if there was duplicative research or work on Plaintiffs' reply.  The Court finds that it is reasonable

---

[5]*See* Entries on January 24, 2011 (3.75 hours); and January 25, 2011 (8.75 hours).

[6]*See* Entry on January 26, 2011 (2.25 hours).

11

to allow 10 hours for both the researching and writing of the reply.

Finally, the Court examines Mr. Youtz's claim of 6.25 hours for preparing Plaintiffs' Reply on Their Fee Petition.  The Court notes that Mr. Youtz provides no contemporaneous records on when he spent that time and how he spent that time.  The Court is inclined to allow Mr. Youtz 4.00 hours for preparing Plaintiffs' Reply on Their Fee Petition.

In sum, the Court concludes that Plaintiffs have failed to prove that Mr. Youtz and Ms. Bowers reasonably spent a total of 78.00 hours on work resulting from the second removal. Instead, the Court determines that Mr. Youtz and Ms. Bowers can reasonably claim a total of 56.65 hours of work incurred as a result of the second removal.  The 56.65 hours of work is calculated as follows:

For Mr. Youtz–

| | |
|---|---|
| January 17, 2011 | 0.65 hours; |
| March 24, 2011 | 1.75 hours; and |
| Preparation of | |
| Plaintiffs' Reply on | |
| Their Fee Petition | <u>4.00 hours</u> |
| | |
| Total Hours | 6.4 hours |

For Ms. Bowers–

| | |
|---|---|
| December 2, 2010 | 3.25 hours; |
| December 11, 2010 | 3.75 hours; |
| December 12, 2010 | 5.75 hours; |
| December 13, 2010 | 6.25 hours; |
| December 14, 2010 | 6.75 hours; |
| December 15, 2010 | 4.50 hours; |
| December 16, 2010 | 6.50 hours; |
| March 3, 2011 | 0.75 hours; |
| March 9, 2011 | 2.25 hours; and |
| March 10, 2011 | <u>0.50 hours</u> |
| | |
| Total Hours | 40.25 hours. |

12

Also, combined Ms. Bowers' January 24 and 25, 2011 entries with Mr. Youtz's January 26, 2011 entry for a total of 10.00 hours for those three days.

> b. *Reasonable Hourly Rate*

Both Ms. Bowers and Mr. Youtz contend that a reasonable hourly rate for their services is $450 an hour. Defendant vigorously opposes that rate and suggests that a reasonable rate is $200 an hour. Defendant, however, does not dispute the relevant legal experience of Ms. Bowers and Mr. Youtz: Ms. Bowers has been engaged in the practice of law since 1988 and has worked on labor and employment cases for a total of about five years; Mr. Youtz has practiced law since 1991 and has worked extensively on labor and FLSA matters since 1998; and Mr. Youtz has participated in several national conferences on employment law.

Mr. Youtz asserts that there are no other attorneys in New Mexico that he is aware of who specialize in FLSA litigation. Mr. Youtz claims that in 1998 he was paid $250 an hour but he fails to substantiate that claim with any detailed information regarding the circumstances of the payment of that rate. Plaintiffs also cite to *Palm, et al. v. Board of County Commissioners of Bernalillo County*, Civ. No. 09-397 MCA/LAM in which the Honorable United States District Court Judge M. Christina Armijo awarded Mr. Youtz and Ms. Bowers a rate of $450 an hour. *Palm* was a collective action brought under the FLSA involving more than 27 named plaintiffs which ultimately settled just days prior to trial. The settlement established a common fund from which plaintiffs' attorneys' fees would be paid. Despite the agreement to pay plaintiffs' attorneys a portion of the common fund, Judge Armijo engaged in a lodestar analysis. Judge Armijo found "that the lower end fees described in counsel's affidavits are more in line with the Albuquerque-Santa Fe market for cases with the *level of complexity* demonstrated by the present case, and further finds that an hourly rate of $450 for senior attorneys is fair and reasonable

under prevailing standards for comparable legal services in the Albuquerque-Santa Fe market."
Order (Doc. No. 152) at 4, filed Nov. 24, 2010, Civ. No. 09-397 MCA/LAM (emphasis added).
Clearly, Judge Armijo based her hourly rate finding on the "complexity" of the *Palm* case, a case
in which plaintiffs' counsel had already prepared for what would be a lengthy and complicated
jury trial.  The situation in *Palm* is vastly different than the situation in this case which involves
the much more limited and rather straightforward circumstances of a second removal and second
remand.  The Court does not find the *Palm* case persuasive evidence that the prevailing market
rate in New Mexico for FLSA attorneys is necessarily $450 an hour.

Plaintiffs further cite to a New Mexico wage and hour case, *Armijo v. Wal-Mart Stores,
Inc.*, D-0117-CV 2000002211 (1st Judicial Dist.), in which the state judge on September 29, 2009
awarded Mr. Youtz a rate of $650 an hour.  The parties in *Armijo* entered into a settlement which
established a common fund and provided for the payment of plaintiffs' attorneys' fees from the
common fund.  The state judge approved the settlement of plaintiffs' attorneys' fees, awarded a
lump sum of $6,000,000 to plaintiffs' attorneys, and allocated 20% of that amount to Youtz &
Valdez, P.C. plus $82,500.  There is no indication in the state judge's Order and Final Judgment
Approving Settlement Between Class Plaintiffs and Wal-Mart Stores, Inc. (Doc. No. 20-3)
regarding the hours the plaintiffs' attorneys worked on the case or regarding a specific hourly
rate.  The state judge simply approved a settlement which included lump sum payments of
attorneys' fees to the various law firms representing the plaintiffs.  Unlike *Armijo*, this case does
not concern a common fund nor does it involve a defendant who has agreed, by way of
settlement, on the amount of the award of attorney's fees.

Finally, Plaintiffs cite to *Bruner v. Sprint/United Management Co.,* 2009 WL 2058762
(D. Kan.) (unpublished decision), an FLSA collective action case, as an example of a Tenth

Circuit district court which determined the rate for plaintiffs' attorneys to be $590.91 an hour. As in *Armijo, Bruner* also involved a settlement and the establishment of a common fund from which plaintiffs' attorneys' fees would be paid. The plaintiffs in *Bruner* requested that their attorneys be awarded 30% of the common fund. The district court noted that "[i]n common fund cases, the Tenth Circuit applies a hybrid approach [to determining reasonable attorney's fees by] combining the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Id*. at *3 (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). Because this case does not present a common fund situation where the plaintiffs' attorneys' fees are not contested by the defendant, the Court applies a straight-forward lodestar analysis. In other words, as with *Armijo*, the circumstances in *Bruner* are not sufficiently similar or analogous to the circumstances here to be applicable. The Court determines that Plaintiffs have failed to carry their burden of showing that $450 an hour is the prevailing market rate in New Mexico for an attorney specializing in FLSA litigation. Defendant, on the other hand, has presented credible evidence that the prevailing market rate for experienced employment attorneys in Albuquerque is $250 an hour. *See* Affidavit of Robert C. Conklin (Doc. No. 19-4) at ¶5. The Court, therefore, concludes that a reasonable hourly rate for Mr. Youtz and Ms. Bowers is $250 an hour for their work on the remand issue .

### c.  Calculating the Lodestar Amount for Mr. Youtz and Ms. Bowers

Having determined that it was reasonable for Mr. Youtz and Ms. Bowers to have worked a total of 56.65 hours as a result of the second removal and having determined that a reasonable rate of pay is $250 an hour, the Court determines that Plaintiffs are entitled to a total of $14,162.50 in attorneys' fees. In addition, Plaintiffs are entitled to $500.00 in fees for the law clerk's work and to $56.25 in fees for the paralegal's work. *See Ramos*, 713 F.2d at 558-59 (if

15

law clerk and legal assistant services are billed separately, then "[t]he court should scrutinize the reported hours and the suggested rates in the same manner it scrutinizes lawyer time and rates."). Accordingly, the total allowable fees equals $14,718.75 plus the applicable state gross receipts tax.

>    *2. Additional Charges*

Finally, Defendant contends that the Court should reject the charges for faxes, PACER-NET online transactions, and Westlaw online legal research because Plaintiffs have not submitted any documentation regarding those charges.  Mr. Youtz responds to this contention by focusing on the Westlaw charges, which is the most significant charge at $225 plus the applicable state gross receipts tax.  Mr. Youtz states that his law firm charges clients $25, plus the applicable gross receipts tax, each time Westlaw is accessed.  Mr. Youtz claims that for the relevant time period Westlaw was accessed nine times, thereby amounting to a charge of $225. Mr. Youtz has not submitted any documentation which itemizes the Westlaw charges by subject matter.  Without that kind of information, it is impossible for the Court to determine if Westlaw was used to conduct "background" research which is not an allowable expense, if the Westlaw use was excessive, or if the Westlaw use was perfectly reasonable.  Consequently, the Court will not allow the Plaintiffs to recoup the Westlaw charges but will allow Plaintiffs to recoup the fairly insignificant charges for faxes and PACER-NET online transactions which total $19.60 plus the applicable state gross receipts tax.

*C. Conclusion*

Reasonable attorneys' fees amount to $14,718.75 and reasonable additional charges amount to $19.60.  Hence, Defendant must pay Plaintiffs a total of $14,738.35 plus the applicable state gross receipts tax by September 1, 2011.

IT IS ORDERED that by September 1, 2011, Defendant must pay Plaintiffs  $14,738.35 plus the applicable state gross receipts tax for the reasonable attorneys' fees and costs which Plaintiffs incurred as a result of the second removal.


_____
SENIOR UNITED STATES DISTRICT JUDGE

17